THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BRIAN THOMAS STARK,

                       Petitioner,

    v.

DANIEL WHITE,

                       Respondent.

CASE NO. C14-1538-JCC

ORDER

This matter comes before the Court on Petitioner's objections (Dkt. No. 58) to the report and recommendation of the Honorable Michelle L. Peterson, United States Magistrate Judge (Dkt. No. 57). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby finds oral argument unnecessary and OVERRULES Petitioner's objections, APPROVES and ADOPTS the report and recommendation, DENIES Petitioner's petition for a writ of habeas corpus, and DISMISSES the case with prejudice for the reasons explained herein.

## I.   BACKGROUND

Judge Peterson's report and recommendation sets forth the underlying facts of this case and the Court will not repeat them here except as relevant. (*See id.* at 2–6.) Petitioner brings this § 2254 habeas action to challenge his conviction of attempted first-degree child molestation (Count I), first-degree child molestation (Count II), first-degree incest (Count III), and third-degree child molestation (Count IV), all involving his stepdaughter C.W. (Dkt. No. 48-1 at 1046-

58.) Judge Peterson recommends that the Court deny Petitioner's habeas petition and dismiss the case. (Dkt. No. 57 at 39).

Petitioner has filed objections to the report and recommendation. First, Petitioner objects to the report and recommendation's rejection of his claim that his attorney's failure to interview and call Petitioner's nephew, Jeffrey Stark, as a witness constituted ineffective assistance of counsel.[1] (Dkt. No. 58 at 2–8.) Second, Petitioner objects to the report and recommendation's rejection of his claim that Jury Instruction Number 22 relieved the State of its burden of proof. (*Id.* at 8–11.) Third, Petitioner objects to the report and recommendation's rejection of his other ineffective assistance of counsel claims. (*Id.* at 11.) Fourth, Petitioner objects to the report and recommendation's rejection of his prosecutorial misconduct claim. (*Id.* at 12.)

## II.    DISCUSSION

### A.    Standard of Review

District courts review *de novo* those portions of a report and recommendation to which a party objects. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Objections are required to enable the district court to "focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985).

A state prisoner may collaterally attack their detention in federal court if they are being held in violation of the Constitution or laws and treaties of the United States. 28 U.S.C. § 2254(a). Under the standards imposed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a habeas corpus petition with respect to any claim adjudicated on the merits in state court only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d). The court may find constitutional error only if the state court's conclusion was "more than incorrect or erroneous.

---

[1] The Court will refer to Jeffrey Stark as Jeffrey for clarity.

1    The state court's application of clearly established law must be objectively unreasonable."

2    *Lockyer v. Andrade*, 538 U.S. 63, 75 (2005) (internal citations omitted). A federal court may not

3    overturn state court findings of fact "absent clear and convincing evidence" that they are

4    "objectively unreasonable." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The petitioner

5    carries the burden of proof and the court is "limited to the record before the state court that

6    adjudicated the claim[s] on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is a

7    "highly deferential standard for evaluating state-court rulings, which demands that state-court

8    decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per

9    curiam) (internal citations omitted).

       If the court finds there was a constitutional error, a habeas petitioner is not entitled to

10   relief unless the error had a "substantial and injurious effect or influence on the" factfinder. *Fry*

11   *v. Pliler*, 551 U.S. 112, 121 (2007) (extending *Brecht v. Abrahamson*, 507 U.S. 619 (1993), to a

12   federal court's collateral review of a state-court criminal judgment on a habeas petition). This

13   has been called the "harmless error" standard. *See Kotteakos v. United States*, 328 U.S. 750

14   (1946). In applying the harmless error standard, the court must determine whether the error

15   substantially influenced the factfinder, rather than placing the burden on the petitioner to show

16   harmful error. *O'Neal v. McAninch*, 513 U.S. 432, 436–37 (1995).

17   **B.    Ineffective Assistance of Trial Counsel for Failure to Interview or Subpoena**
18
19           **Witness (Claim 1)**

20           Petitioner argues that his trial counsel was ineffective because he failed to interview and

21   call Petitioner's nephew Jeffrey as a witness at trial. After trial, Jeffrey learned that C.W. had

22   included him in her description of the events underlying Count II. (Dkt. No. 48-2 at 570.) When

23   Jeffrey denied his presence during those events, C.W.'s mother asked Jeffrey for something in

24   writing. (*Id.*) A few days later, she received a letter in an envelope with Jeffrey's return address.

25   (*Id.*) The letter reads as follows:

26           To whom it may concern,

ORDER
C14-1538-JCC
PAGE - 3

> Approximately when I was 14 or 15 I stayed the night with my uncle Brian and he bought me a baseball mit[t] made by Nike at [T]arget and that night we watched tv and I slept on the couch and the next day I played with my little cousins outside, right out front, what I remember is Brian mowing the lawn and then I went home. The allegations that [C.W.] made are false because we never went on a bike ride and Brian never told me to go home. There was no home unbuilt that we went to and that is the truth. I will testify under oath that the allegations are false that I was not there and he never said that to me. [Signed Jeff Stark]

(*Id.* at 570–71.) In 2014, approximately three years after Petitioner's trial, Jeffrey died. (*Id.* at 571.)

      1.    *Legal Standard*

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Courts evaluate claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland. Id.* Under that test, a defendant must prove that (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for counsel's error, the result of the proceedings would have been different. *Id.* at 687–94. When considering the first prong of the *Strickland* test, judicial scrutiny must be highly deferential. *Id.* at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id.* "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. The second prong of the *Strickland* test requires a showing of actual prejudice. Thus, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

      2.    *Objections*

Judge Peterson reviewed Claim 1 *de novo* because it was not clear that the Washington Supreme Court Commissioner (the "Commissioner") adjudicated the merits of Petitioner's claim. (Dkt. No. 57 at 16.) Petitioner raises two objections to the report and recommendation's

conclusion that this claim should be denied.

First, Petitioner argues that Judge Peterson incorrectly applied *Strickland*'s prejudice standard by requiring him to show that Jeffrey's testimony would have led to an acquittal, as opposed to causing one juror to change their vote. (Dkt. No. 58 at 3–4.) Petitioner is correct that, on *de novo* review, he must demonstrate only a reasonable probability that the outcome of the proceeding would have been different, not that he would have been acquitted by a unanimous jury. *See Strickland*, 466 U.S. at 694; *United States v. Price*, 566 F.3d 900, 911 (9th Cir. 2009) (applying *Strickland* prejudice standard to evaluate a *Brady* claim).

Second, Petitioner argues that Judge Peterson incorrectly concluded that he failed to carry his evidentiary burden as to how Jeffrey would have testified at trial because the letter was unauthenticated and unsworn. (Dkt. No. 58 at 5–7.) Habeas proceedings are not subject to the same evidentiary rules that limit the admissibility of unauthenticated, unsworn statements at trial. *See* Wash. Evid. R. 1101(c)(3). But such statements "generally cannot carry a habeas petitioner's burden to show *Strickland* prejudice." *Couturier v. Presiding Judge of the L.A. Superior Court*, 2017 WL 3531498, slip op. at 9 (C.D. Cal. 2017). Here, Jeffrey's letter is undated and unsworn, and no other person witnessed him writing or sending it. (Dkt. No. 48-2 at 570.) Thus, the letter is not sufficient to establish how Jeffrey would have testified at trial and it is therefore inadequate to establish prejudice.

Even assuming that Jeffrey would have testified to the contents of the letter, his statements do not establish a substantial likelihood that the outcome of Petitioner's trial would have been different as to any count if Jeffrey had testified. C.W. testified that the abuse underlying Count II took place when she was 10 and Jeffrey was 12. (Dkt. No. 48-2 at 564.) Jeffrey's letter discusses events that occurred a year or two later. (*Id.* at 570–71.) C.W. testified about going on a bike ride and visiting a half-built home in the earlier time period, but Jeffrey's letter states that he did not witness such events during the later time period. (*Compare id.* at 564 *with id.* at 570–71.) Thus, his letter does not expressly contradict C.W.'s testimony about the

1   earlier events, directly undercut the State's evidence, undermine C.W.'s credibility as a witness,

2   or bolster other witnesses' testimony. Therefore, the letter is inadequate to establish prejudice

3   under *Strickland*. Accordingly, Petitioner's objections are OVERRULED on this ground.

4   **C.      Instructional Error (Claim 2(a))**

5          At trial, both defense counsel and the prosecution proposed a jury unanimity instruction.

6   (*See* Dkt. Nos. 48-1 at 855–859; 48-2 at 144, 147–49.) Defense counsel proposed an instruction

7   that tracked Washington's Pattern Jury Instruction 4.25:

8          The State alleges that the defendant committed acts of Child Molestation in the
       First Degree and Incest in the First Degree on multiple occasions. A separate crime
9          is charged in each count. To convict the defendant on the count of Child
       Molestation in the First Degree, one particular act of molestation must be proved
10         beyond a reasonable doubt, and you must unanimously agree as to which act has
       been proved. To convict the defendant on the count of Incest in the First Degree,
11         one particular act of sexual intercourse must be proved beyond a reasonable doubt,
       and you must unanimously agree as to which act has been proved. You need not
12         unanimously agree that the defendant committed all the acts of child molestation or
       incest. You must, however, find a separate and distinct act for each count charged.

13  (Dkt. No. 48-2 at 149.) The prosecutor proposed a different opening sentence: "Evidence has

14  been produced suggesting that the defendant committed acts of Child Molestation in the First

15  Degree and Incest in the First Degree on multiple occasions." (*Id.* at 144.) The prosecutor

16  explained that the State had only alleged one act of the charged crimes, not "acts" of both first-

17  degree child molestation and first-degree incest, but that the trial court had admitted evidence of

18  other acts. (Dkt. No. 48-1 at 867-68.) The state court used the prosecutor's proposed sentence for

19  Instruction 22. (*Id.* at 1042.)

20         In his personal restraint petition before the Washington Supreme Court, Petitioner

21  challenged his conviction on the ground that Instruction 22 communicated to the jury that the

22  State's evidence suggested Petitioner was guilty and thus was an improper comment on the

23  evidence, in violation of the Washington constitution and the Sixth Amendment. (Dkt. No. 48-2

24  at 68–69.) The Commissioner concluded that the introductory sentence of Instruction 22 "was

25  not an obvious comment on the strength of the State's evidence or an explicit or implicit

26

ORDER
C14-1538-JCC
PAGE - 6

assessment of the evidence. It did not resolve disputed factual issues, nor was it tantamount to a directed verdict." (*Id.* at 656.) Judge Peterson concluded that the Commissioner adjudicated Petitioner's federal Sixth Amendment instructional error claim on the merits and therefore applied AEDPA deference in her review of the decision. (Dkt. No. 57 at 25.) Petitioner argues that Judge Peterson erred when she applied AEDPA deference to the adjudication and when she concluded that the Commissioner's ruling on the jury instruction issue was not contrary to or an unreasonable application of clearly established law. (Dkt. No. 58 at 8–11.)

> 1.   *Legal Standard*

"In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). But "not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation." *Id.* The relevant inquiry is whether an "ailing instruction so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Where an instruction is ambiguous, the court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.* (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d). "A judgment is normally said to have been rendered 'on the merits' only if it was 'delivered after the court . . . heard and *evaluated* the evidence and the parties' substantive arguments.'" *Johnson v. Williams*, 568 U.S. 289, 302 (2013) (quoting Black's Law Dictionary 1199 (9th ed. 2009)). But "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits." *Id.* The presumption is rebuttable in limited circumstances, such as when the state standard is less protective or the state and

1  federal standards are quite different. *See id.*

2              2.      *Objection to AEDPA Standard of Review*

3          Petitioner objects to Judge Peterson's finding that the Court must apply AEDPA

4  deference to the Commissioner's rejection of this claim. In reviewing Petitioner's instructional

5  error claim, Judge Peterson found that the Commissioner did not expressly address Petitioner's

6  federal claim. (Dkt. No. 57 at 25.) But because Petitioner brought both state and federal

7  challenges to Instruction 22, the Court begins with the presumption that the Commissioner

8  adjudicated the merits of the federal claim. *See Johnson*, 568 U.S. at 301. Petitioner does not

9  offer any legal authority which establishes that Washington's standard is less protective than or

10  quite different from the federal standard. (*See* Dkt. No. 58 at 9–10.) Thus, Petitioner has failed to

11  rebut the presumption that the Commissioner adjudicated his instructional error claim on the

12  merits. Therefore, the Court applies AEDPA deference to its review of the Commissioner's

13  decision.

14              3.      *Objection to Federal Habeas Analysis*

15          Petitioner objects to Judge Peterson's conclusion that the Commissioner's ruling on the

16  jury instruction issue is not contrary to or an unreasonable application of clearly established law.

17  Petitioner argues that Judge Peterson erred because the average juror would not know the

18  difference between a judge telling them that evidence had been produced "suggesting" that

19  Petitioner committed a crime and a judge telling them Petitioner did in fact commit a crime.

20  (Dkt. No. 58 at 10.) However, an instruction "'may not be judged in artificial isolation,' but must

21  be considered in the context of the instructions as a whole and the trial record." *See Estelle*, 502

22  U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). Several reasons support the conclusion that

23  Instruction 22 did not violate Petitioner's constitutional rights. First, Instruction 22 did not

24  obviously comment on the strength of the State's evidence by telling jurors that a contested

25  element of a charged offense had been satisfied. (*See* Dkt. No. 48-1 at 1042.) Second, while the

26  first sentence of Instruction 22 stated that evidence had "been produced suggesting" that

Petitioner committed certain acts, the remainder of Instruction 22 also reiterated that a conviction required proof beyond a reasonable doubt. (*See id.*) Third, the jurors are presumed to have followed the state court's other instructions. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985). The trial judge instructed the jury to disregard any apparent comments on the evidence:

> Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appears to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

(Dkt. No. 48-1 at 1020.) Thus, when considered as a whole and in combination with the state court's other instructions, Petitioner has not demonstrated a reasonable likelihood that Instruction 22 relieved the State of its burden of proving every element of the charged crimes. Therefore, the Commissioner's ruling on the jury instruction issue is not contrary to or an unreasonable application of clearly established law. Accordingly, Petitioner's objections are OVERRULED on this ground.

### D.     Other Ineffective Assistance of Counsel (Claims 2(b) and 2(c))

Petitioner argues that trial counsel provided ineffective assistance when he failed to object to Instruction 22 and that appellate counsel provided ineffective assistance when he failed to challenge Instruction 22 on direct appeal. (Dkt. No. 58 at 11.) Judge Peterson recommended that these claims be denied because Petitioner failed to establish that the Commissioner's adjudication of this issue unreasonably applied *Strickland*'s prejudice standard when the Commissioner found that Petitioner did not show prejudice. (Dkt. No. 57 at 30–31.) Petitioner's brief objections largely repeat his arguments as to why he was prejudiced by Instruction 22. (*See* Dkt. No. 58 at 11.) The Court agrees with Judge Peterson's reasoning and finds that Petitioner's objections are unavailing, as discussed above. *See supra* Section II.C. Therefore, Petitioner's objections are OVERRULED on these grounds.

### E.     Prosecutorial Misconduct (Claim 3)

Petitioner brings a due process claim based on a statement the prosecutor made in rebuttal

during closing arguments. (Dkt. No. 49 at 34–37.) In closing, defense counsel argued that the State could have called Jacob Wagener and Matthew Purvine as witnesses to corroborate C.W.'s testimony. (Dkt. No. 48-1 at 926–27.) In rebuttal, the prosecutor responded that because defense counsel put on a case, he likewise had the opportunity to call those witnesses. (*Id.* at 945.) Defense counsel did not object to the prosecutor's comments. (*Id.*) Petitioner challenged the prosecutor's remarks on direct appeal, arguing that the statements improperly shifted the burden of proof to the defense in violation of his Fourteenth Amendment due process rights, but the court rejected his argument. (*Id.* at 1161–63, 1257–59.) To prevail now on his habeas claim, Petitioner must demonstrate that the prosecutor's allegedly improper remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Judge Peterson concluded that the Washington Court of Appeals reasonably ruled that the prosecutor's comments during rebuttal in closing arguments were an invited response to defense counsel's suggestion that the State failed to call the two witnesses. (Dkt. No. 57 at 37–38). While the Court of Appeals did not cite to federal caselaw, the state law prosecutorial misconduct standard it applied is the functional equivalent to the federal standard. *See Ruth v. Glebe*, Case No. C15-0533-TSZ-JPD, Dkt. No. 45 at 20–24 (W.D. Wash. 2016), *R & R adopted*, 2016 WL 10894042 (W.D. Wash. Sept. 28, 2016), *aff'd*, 715 Fed. Appx. 644 (9th Cir. 2017).

Petitioner briefly objects to the report and recommendation's application of AEDPA deference rather than *de novo* review. (Dkt. No. 58 at 12.) But his argument is unavailing because the Court of Appeals applied the functional equivalent of the federal standard. *See Early v. Packer*, 537 U.S. 3, 8 (2002). Nor does Petitioner demonstrate that the state Court of Appeals' adjudication was an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d). Therefore, Petitioner's objections are OVERRULED on this ground.

//

### F.      Certificate of Appealability

For the reasons stated in the report and recommendation, Petitioner has made a substantial showing of the denial of a constitutional right as to Claims 1 and 2(a). (*See* Dkt. No. 57 at 38–39). The Court therefore GRANTS Petitioner a certificate of appealability as to Claims 1 and 2(a) and DENIES it as to his other claims.

## III.   CONCLUSION

The Court has reviewed the balance of the report and recommendation and finds no error. For the foregoing reasons, the Court hereby FINDS and ORDERS as follows:

1. Petitioner's objections to the report and recommendation (Dkt. No. 58) are OVERRULED;

2. The Court APPROVES and ADOPTS the report and recommendation (Dkt. No. 57);

3. Petitioner's habeas petition (Dkt. Nos. 1, 36) and this action are DISMISSED with prejudice;

4. Petitioner is GRANTED issuance of a certificate of appealability as to Claims 1 and 2(a) and DENIED issuance of a certificate of appealability as to his other claims; and

5. The Clerk is DIRECTED to send copies of this order to the parties and to Judge Peterson.

DATED this 19th day of June 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE